TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00194-CV






In the Matter of J.P., Appellant









FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-15,131, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 






PER CURIAM


 J. P. appeals from his adjudication as a delinquent child and dispositional order of probation
that placed him on intensive supervision probation for one year in the custody of his mother. We will
reverse the trial court judgment and remand for a new trial.


Points of Error



 Appellant brings nine points of error, contending that the trial court erred in failing to give
appellant relief when the State failed to respond to his interrogatories and requests for production; that it
committed fundamental error by failing to admonish appellant of all of the possible consequences of the
proceedings; that it erred in denying a challenge for cause; that the evidence is factually and legally
insufficient to support the jury verdict; that the trial court erred in refusing the request to modify the
application paragraph of the jury charge; that the charge erred because it failed to limit the culpable mental
states; that the judgment of delinquency contains several errors and needs to be reformed; and that the
dispositional order of probation contains several errors. We address the sufficiency points first.


The Evidence


 Appellant confessed. On the day in question, he went to the Coronado Hills Apartments
to visit his friend Quincy (1) and Quincy's brother Clarence. They were smoking marihuana, drinking beer,
and hanging out with a group of youths, some of them gang members (the "gang group"). He said that he
had been a member of the Crips gang since he was ten years old. Quincy went to get more beer at a nearby
convenience store. On his return, he told appellant and the others "some Mexicans had jumped him right
there, by the store and the Laundromat." The gang group then confronted the Hispanic group and a bottle
throwing melee began.

 The Hispanic group began running off, pursued by the gang group. Appellant kept fighting
with the victim. When the gang group members began returning, the victim saw them and tried to run away. 
Appellant tripped the victim. The others then closed in and began kicking the victim, hitting him with
bottles, and jumping on his head. When a police officer responded to the call about a fight, the convenience
store clerk identified appellant as one of the participants in the bottle throwing incident. Appellant fled, but
was apprehended. He said that he had cut his hand while he was fighting with the victim "one-on-one."

 Quincy's brother, Clarence, testified that he and appellant were involved in the bottle
throwing incident, although appellant did not personally throw any bottles. He did not see all of the events,
but saw the end of the beating. He saw appellant in the circle. His testimony at trial and his police
statement were inconsistent in that at trial he said that he did not see appellant kick the victim but in the
police interview he said that appellant might have been kicking the victim because appellant was part of the
circle when Clarence observed the beating.

 Quincy's confession stated that he had gone to get beer and that this "group of Mexicans"
tried to jump him. The victim called him a "Spanish word" that he did not understand, but thought was
something bad. After the bottle-throwing, he noticed gang members had surrounded the victim and were
kicking and punching him. He also punched the victim because he thought the victim had called him a bad
name.

 Bobby's statement was read into evidence. He also was part of the gang group. He saw
that the group had caught the victim and joined in. They were "all kicking and hitting him."

 Other witnesses testified to the general outline of events, including seeing the bottle throwing
melee and later the circle of youths kicking the victim. None of these other witnesses specifically placed
appellant in the circle of persons attacking the victim. Two witnesses employed at Brackenridge Hospital
testified about the victim's injuries.


Sufficiency of the Evidence


 In points of error four and five, appellant contends that the evidence is legally and factually
insufficient to support the verdict. The critical inquiry on review of the legal sufficiency of the evidence is
whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981); In re M.S.,
940 S.W.2d 789, 792 n.2 (Tex. App.--Austin 1997, no writ); In re P.L.W., 851 S.W.2d 383, 387 (Tex.
App.--San Antonio 1993, no writ). The trier of fact determines the credibility of the witnesses and can
believe or reject all or any part of the testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim.
App. 1978); Austin v. State, 794 S.W.2d 408, 412 (Tex. App.--Austin 1990, pet. ref'd). The fact finder
can draw reasonable inferences and make reasonable deductions from the evidence within the context of
the crime. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). 
In determining complicity as a party to the offense, a court may examine the events occurring before,
during, or after the commission of the offense. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App.
1986), cert. denied, 480 U.S. 940 (1987); In re P.L.W., 851 S.W.2d at 387. Flight is a circumstance
from which guilt can be inferred. Cantrell v. State, 731 S.W.2d. 84, 92 (Tex. Crim. App. 1987); In re
P.L.W., 851 S.W.2d at 387.

 The State, applying the law of parties, alleged that appellant engaged in delinquent conduct
by committing aggravated assault by striking and kicking the victim. The court charged the jury on the law
of parties and instructed the jurors that a person is criminally responsible as a party to an offense if the
offense is committed by his own conduct or by the conduct of another for which he is criminally responsible,
or by both. The charge instructed the jurors that a person is criminally responsible for an offense committed
by the conduct of another if that person, acting with the intent to promote or assist the commission of the
offense, solicits, encourages, directs aids, or attempts to aid the other person in committing the offense.

 The fact finder could have found that appellant intended to assist, aid and encourage the
other members of the group in the kicking and beating because of his fighting with and tripping the victim
as the others approached. He confessed that he cut his hand while fighting with the victim. There was
evidence that he remained in the "kicking circle." The jury could have reasonably interpreted the statements
that "they were all kicking him" to include appellant. There was also evidence of flight. The evidence is
legally sufficient to support the verdict.

 In reviewing the factual sufficiency of the evidence, the appellate court considers all the
relevant record evidence, not just that supporting the verdict. The evidence tending to prove the disputed
elements of the crime is to be compared with the evidence that tends to disprove it. Factual insufficiency
should be found only when the verdict is so against the great weight and preponderance of the evidence
presented at trial as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim
App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd). In his brief,
appellant emphasizes that there is no direct statement that appellant kicked the victim, or hit him with a
bottle or jumped on his head. However, as detailed above, appellant was charged under the law of parties.
There was evidence that he hit the victim, tripped the victim, and remained in the circle of attackers. The
verdict is not clearly wrong and unjust. We overrule appellant's points of error number four and five.


Discovery



 In point of error one, appellant contends that the trial court erred in failing to give appellant
relief when the State failed to respond to appellant's interrogatories and requests for production. Tex. R.
Civ. P. 215(5). We can discuss this point rather briefly, because the State essentially concedes
noncompliance with the civil discovery rules. Instead, it argues for a substantial compliance rule, and notes
that effective January 1, 1996, civil discovery rules no longer apply to juvenile cases. (2)

 However, at the time of trial, the Texas Rules of Civil Procedure governed the discovery
procedures in juvenile cases. We do not write on a blank slate in dealing with the issue of noncompliance
with discovery rules. Under the rules of civil procedure, failure to respond to or supplement discovery in
the manner set out in the rules must result in the exclusion of the testimony of the undisclosed witness absent
a showing of good cause. Without a showing of good cause, the trial court has no discretion to allow the
testimony of an undisclosed witness whose testimony is excluded under Texas Rule of Civil Procedure
215(5). Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992); New Braunfels Factory
Outlet Ctrs., Inc. v. IHOP Realty Corp., 872 S.W.2d 303, 311 (Tex. App.-- Austin 1994, no writ).
The burden to show good cause is on the party seeking to introduce the testimony. Yeldell v. Holiday
Hills Retirement and Nursing Ctr., Inc., 701 S.W.2d 243, 246 (Tex. 1985). The record must clearly
reflect the evidence and the finding of good cause. Varner v. Howe, 860 S.W.2d 458, 461 (Tex.
App.--El Paso 1993, no writ).

 Appellant repeatedly raised the issue of the State's failure to comply with the discovery
rules. The record does not reflect any showing of good cause. We do not say that it would not have been
possible for the State to show good cause, but such a showing needed to have been made on the record,
with the appropriate findings. In a similar case, In the matter of R. H., 905 S.W.2d 726 (Tex. App.--San
Antonio 1995, no writ), the trial court allowed the only person with personal knowledge of the crime to
testify during the adjudication hearing, although the State failed to disclose him in response to proper
interrogatories. Noting that it was the State's burden to demonstrate good cause to allow the testimony,
the San Antonio Court of Appeals held that the trial court abused its discretion in allowing the testimony. 
Id. at 728. We see no compelling distinction between the current cause and R.H.

 The State also argues that the application of the Alvarado rule would in essence constitute
a "death penalty" sanction and that the factors set out in Transamerican Natural Gas Co. v. Powell, 
811 S.W.2d 913 (Tex. 1991), should be applied. However, Transamerican applies to discretionary
sanctions, not Rule 215(5) sanctions. See Patton v. Saint Joseph's Hosp., 887 S.W.2d 233, 238 (Tex.
App.--Fort Worth 1994, writ denied).

 Accordingly, we sustain appellant's point of error number one. Having found sufficient
evidence to support the adjudication, we do not reverse and find in the juvenile's favor, but reverse and
remand for new trial. Because of our disposition of the cause, we do not consider appellant's other points.




Before Justices Powers, Jones and Kidd

Reversed and Remanded

Filed: August 28, 1997

Do Not Publish
1. Because some participants were juveniles and some adults, parties will be referred to either
by first names or initials.
2. Act of May 27, 1995, 74th Leg., R.S., ch. 262, §14, 1995 Tex. Gen. Laws 2524 (codified
as Tex. Fam. Code Ann. § 51.17(b)).



r and five.


Discovery



 In point of error one, appellant contends that the trial court erred in failing to give appellant
relief when the State failed to respond to appellant's interrogatories and requests for production. Tex. R.
Civ. P. 215(5). We can discuss this point rather briefly, because the State essentially concedes
noncompliance with the civil discovery rules. Instead, it argues for a substantial compliance rule, and notes
that effective January 1, 1996, civil discovery rules no longer apply to juvenile cases. (2)

 However, at the time of trial, the Texas Rules of Civil Procedure governed the discovery
procedures in juvenile cases. We do not write on a blank slate in dealing with the issue of noncompliance
with discovery rules. Under the rules of civil procedure, failure to respond to or supplement discovery in
the manner set out in the rules must result in the exclusion of the testimony of the undisclosed witness absent
a showing of good cause. Without a showing of good cause, the trial court has no discretion to allow the
testimony of an undisclosed witness whose testimony is excluded under Texas Rule of Civil Procedure
215(5). Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992); New Braunfels Factory
Outlet Ctrs., Inc. v. IHOP Realty Corp., 872 S.W.2d 303, 311 (Tex. App.-- Austin 1994, no writ).
The burden to show good cause is on the party seeking to introduce the testimony. Yeldell v. Holiday
Hills Retirement and Nursing Ctr., Inc., 701 S.W.2d 243, 246 (Tex. 1985). The record must clearly
reflect the evidence and the finding of good cause. Varner v. Howe, 860 S.W.2d 458, 461 (Tex.
App.--El Paso 1993, no writ).

 Appellant repeatedly raised the issue of the State's failure to comply with the discovery
rules. The record does not reflect any showing of good cause. We do not say that it would not have been
possible for the State to show good cause, but such a showing needed to have been made on the record,
with the appropriate findings. In a similar case, In the matter of R. H., 905 S.W.2d 726 (Tex. App.--San
Antonio 1995, no writ), the trial court allowed the only person with personal knowledge of the crime to
testify during the adjudication hearing, although the State failed to disclose him in response to proper
interrogatories. Noting that it was the State's burden to demonstrate good cause to allow the testimony,
the San Antonio Court of Appeals held that the trial court abused its discretion in allowing the testimony. 
Id. at 728. We see no compelling distinction between the current cause and R.H.

 The State also argues that the application of the Alvarado rule would in essence constitute
a "death penalty" sanction and that the factors set out in Transamerican Natural Gas Co. v. Powell, 
811 S.W.2d 913 (Tex. 1991), should be applied. However, Transamerican applies to discretionary
sanctions, not Rule 215(5) sanctions. See Patton v. Saint Joseph's Hosp., 887 S.W.2d 233, 238 (Tex.
App.--Fort Worth 1994, writ denied).

 Accordingly, we sustain appellant's point of error number one. Having found sufficient
ev